Alfred J. Miville and Marjorie C. Miville v. Commissioner.
Miville v. Commissioner
Docket No. 5095-67.
United States Tax Court
T.C. Memo 1970-188; 1970 Tax Ct. Memo LEXIS 177; 29 T.C.M. (CCH) 856; T.C.M. (RIA) 70188; June 30, 1970, filed *177 In 1961 T's father and mother because of marital difficulties entered into a marital settlement agreement which among other things provided that the mother was to receive $127,400 ($15,000 down and the balance over the years ending January 2, 1977. In the event of the mother's death the payments on any balance due were to be made to T and her sister. Held, the agreement was a property settlement agreement and the payments received thereunder byT after her mother's death were not taxable to her as "income in respect of a decedent" under sec. 691(a)(1) and (3), I.R.C. 1954. Don B. Stahr, 713 First National Bank Bldg. of Wichita, Kan., for the petitioners. Larry K. Hercules, for the respondent. 857 TIETJENS
Memorandum Opinion TIETJENS, Judge: For the taxable years 1964 and 1965, respectively, the Commissioner determined deficiencies of $1,309.76 and $1,021.12 in income taxes of petitioners. We must decide whether certain payments which Marjorie C. Miville received during 1964 and 1965 are includable in her gross income under section 691, I.R.C. 1954, [1] as income in respect of a decedent. All *178 of the facts have been stipulated and are so found. Petitioners, Alfred J. Miville and Marjorie C. Miville, husband and wife, resided in Wichita, Kansas at the time they filed their petition herein. They filed joint income tax returns for the calendar years 1964 and 1965 with the district director of internal revenue for the district of Kansas. Marjorie C. Miville (hereinafter referred to as petitioner) is the daughter of Thomas Mayo Crosby and Marjorie Rosen Crosby, deceased. Her parents executed a marital settlement agreement on August 3, 1961, which fully and completely settled their respective property rights and interests and all other claims either of them may have had by reason of the marital status. The terms of the agreement, so far as we have them, follow: MARITAL SETTLEMENT AGREEMENT THIS AGREEMENT, made and entered into this 3rd day of August, 1961, by and between Thomas Mayo Crosby, of Topeka, Kansas, hereinafter designated as "Husband," and Marjorie Rosen Crosby, of Topeka, Kansas, hereinafter designated as "Wife." WITNESSETH THAT: WHEREAS, the parties hereto are Husband and Wife and are now and for some time past have been living separate and apart; and WHEREAS, the *179 Husband has heretofore instituted in the District Court of Shawnee County, Kansas, First Division, an action for divorce against the Wife, which action is now pending in said District Court; and WHEREAS, the Wife has heretofore, and subsequent to the bringing of said action by the Husband, instituted an action in the District Court of Shawnee County, Kansas, Second Division, for support and separate maintenance, which action is presently pending in said Court; and WHEREAS, the parties have heretofore on the 30 day of June, 1961, entered into a written stipulation which outlines in general terms an agreement between the parties for property division or full settlement of property rights by reason of the marital status of the parties; and WHEREAS, under said stipulation the parties agreed to enter into a more detailed Marital Settlement Contract to provide for the more exact or precise terms for carrying out the agreement made in said stipulation; and WHEREAS, both of the parties have as issue of their marriage two children, namely: Marianne Crosby Brinigar (married daughter), 421 Pine Rock Ave., Hamden, Connecticut; Marjorie Crosby Miville, (married daughter), Wichita 12, Kansas, 7504 *180 Hale Ave. and WHEREAS, it is the considered judgment of both Husband and Wife that the differences existing between them which caused the separation still exist and will continue to exist, with the result that said separation will be permanent; and WHEREAS, in order to completely settle their property rights by reason of their marital status, Husband and Wife have been, for several weeks last past, negotiating for a full and complete settlement of their property rights and interests, during which negotiations Husband and Wife have made true, correct, and full disclosure to each other and to the respective counsel for said parties concerning their respective property and property rights; and WHEREAS, Husband and Wife, after receiving full advice from their respective counsel, do hereby announce their desire and intention by this Agreement to make a full and complete settlement of their property rights and to fully and completely dispose of all their property interests as well as right of inheritance, and all other claims of whatsoever kind and nature by reason of the marital status, all to become effective as of the date of the execution of this Agreement, or August 3, 1961. NOW, THEREFORE, *181 Husband and Wife agree to a full and complete settlement upon the terms and conditions hereinafter set forth: 858 1. The Wife shall retain and receive as her separate property all corporate securities or stocks presently registered in her own name; said stocks referred to are enumerated or further described in Exhibit A hereto attached and by reference are made a part hereof; provided, however, that the Wife shall establish an irrevocable trust for her benefit and the contingent benefit of the parties' two daughters over a portion of said stocks or securities having a present market value of $70,000.00. The stocks to be placed in said trust are listed in Exhibit B hereto attached and by reference made a part of this agreement. 2. The Wife shall retain and receive as her sole and separate property the residence she recently purchased, situated in Topeka, Kansas, title to which stands in the Wife's name, subject to the present mortgage indebtedness of approximately $16,396.00, which mortgage the Wife will pay according to its terms, said real estate being described as follows: Lot 17, Block 4, Parkland Subdivision, an Addition to the City of Topeka, Shawnee County, Kansas. 3. The Wife *182 shall further receive from the Husband the sum of $127,400.00, which sum shall be paid to the escrow agent selected by the parties, the First National Bank of Topeka, Kansas. Said amount shall be paid by the Husband to said escrow agent in the following manner: (a) $15,000.00 in cash upon the execution of this Agreement, said sum to be deposited with said escrow agent. (b) The remaining balance of $112,400.00 to be paid by the Husband to said escrow agent, together with interest upon such unpaid balance at the rate of 4% per annum shall be paid accordingly to said escrow agent, according to the schedule of payments set forth in Exhibit C hereto attached and by reference made a part of this agreement. 4. The Husband and Wife further agree, concerning said installment payments to be made by the Husband to said escrow agent for the benefit of the Wife, as follows: (a) Following the execution of this agreement, Husband shall deposit with said escrow agent securities or stocks having a market value of not less than $112,400.00, and shall keep on deposit with said escrow agent bank at all times sufficient securities or stocks to be equal in value to the current remaining balance due the *183 Wife under this Agreement; provided, however, that the Husband shall be extended the privilege to withdraw or substitute other securities from time to time during the period said installment payments are being made. The Husband, at all times in making said deposit of collateral, shall execute to the escrow agent bank an appropriate stock power covering the said stocks and securities deposited, which stock power may be utilized by said escrow agent under the conditions hereinafter provided for: (b) The Husband shall not be given the privilege to accelerate or mature the outstanding balance due the Wife under this settlement agreement. (c) In the event of default by the Husband in making payments to the escrow agent herein provided for, said escrow agent shall notify the Husband, in writing, of said default within ten days and if said default is not cured in thirty days, said escrow agent is then authorized to utilize the said stock powers and sell and convert such stocks and securities into cash in such amounts as will be required to cure the default and make the installment payments due current. (d) In the event of the death of the Husband before the installment payments have been *184 fully made, any remaining installment payments shall then be accelerated and said remaining payments, together with accrued interest, shall forthwith become due and payable. (e) In the event of the death of the Wife prior to the completion of the installment payments to be made by the Husband, all payments provided for under this agreement shall be paid by the Husband to the two daughters of the parties. In the event either of the daughters is not living, the interest of the deceased daughter in said installment payments is given and is to be paid to the issue of such deceased daughter, share and share alike. In the event of no surviving issue, said share shall then pass to or be given to the surviving daughter. 5. In addition to the property previously mentioned which the Wife is to receive, the Husband agrees that the Wife shall be awarded as her own separate property the following items of personal property hereinafter enumerated: (a) Jewelry: 1 diamond set in yellow gold 1 diamond ring,.65 carat 1 3-stone diamond ring, 1-1-carat, 2-.75 carat 1 pair antique yellow gold bracelets, 20 small diamonds 1 antique seed pearl pendant. 859 (These items, if not already in the possession *185 of the Wife, shall be delivered by the Husband to the Wife.) (b) One share of Topeka Country Club stock, which the Husband shall assign to the Wife; the Wife to assume and pay the transfer fees thereon. (c) The Wife shall receive as her own separate property all of the household goods presently in her possession at her home or residence. In addition, the Husband shall deliver or cause to be delivered to the Wife certain rugs enumerated as follows: 1 Lillihan dining room rug, approximately 9 X 12 in size; 1 Sunroom rug (further identified as a Christmas present received by the Wife from the Husband); 1 Daken Prayer Rug (further identified as a present); 1 Kerwin Snai rug. (d) The checking account of the Wife at the Merchants National Bank, Topeka, Kansas. (e) One Life Insurance Annuity Contract issued by the Aetna Life Insurance Company, providing for payment of monthly annuity to the Wife for life, in the amount of $100.00 per month, beginning at the age of 55 years. (This contract is already in the possession of the Wife.) (f) One Life Insurance Contract on the life of the Wife, issued by the Northwestern Mutual Life Insurance Company, Policy No. 2972765, in the face amount of $1,000.00. *186 (g) One 1957 Ford Fairlane 4-door sedan. 6. The Husband shall pay for the benefit of the Wife the following enumerated items: (a) All taxable Court costs that may presently remain due and unpaid to the Clerk of the Supreme Court of the State of Kansas in connection with the two previous appeals to said Court in prior litigation between these parties also all remaining taxable Court costs that may be due and unpaid to the Clerk of the District Court of Shawnee County, Kansas, in cases numbered 83,095 and 87,309. (b) Expenses incurred by the attorneys for the Wife for which they have not been reimbursed, in the amount of $379.08 (as per itemized statement attached hereto market Exhibit D and by reference made a part of this agreement). (c) To the Wife's attorneys, Harold Dohorty's firm and Lester M. Goodell's firm, additional attorneys' fees in the amount of $12,000.00. 7. The Husband shall file an amended Joint Income Tax Return with the Wife for the years 1959 and 1960, and shall assume and pay all taxes, interest and penalties remaining due thereon. The Wife shall file her own individual tax return for the year 1961 and each succeeding year thereafter, and assume and pay all income *187 taxes that may be due thereon. 8. The Wife agrees with the Husband to establish an irrevocable trust as heretofore referred to herein, a true facsimile copy of said trust to be established being hereto attached marked Exhibit E and by reference, so far as pertinent, made a part of this agreement. 9. It is agreed between Husband and Wife that the initial fee to be paid the escrow agent bank, which is designated by said escrow bank as the "Acceptance Fee," in the amount of $200.00, will be shared equally by the parties; thereafter the escrow fee to be exacted by the Bank, beginning in the calendar year 1962 and continuing thereafter during the existence of said escrow, shall be fixed on the basis of one quarter of one percent of the unpaid balance due under this agreement, with a minimum fee fixed of $50.00 per annum, which fee shall be paid by the Wife. 10. It is further agreed between Husband and Wife that, except for the undertakings of the Husband and Wife as fixed in this agreement, each releases the other of any and all claims, demands, rights, interests, covenants, contracts, or cause of action, which he or she may have to the date of these presents, against the other or against *188 the property or estate of the other. The Husband, subject to the undertakings in this agreement, shall be awarded as his own separate property all property presently owned by him or hereafter acquired, of whatsoever kind and nature, whether real estate, personal, or mixed. It is understood that, except for the undertakings of Husband and Wife in this agreement, Husband and Wife hereby mutually waive, relinquish and release all rights in and to the property, income and estate of the other, both during the lifetime and after the death of the other. 11. Husband and Wife agree that this instrument contains the entire agreement of the Husband and Wife and that the prior written Stipulation made between the parties concerning a property settlement has now become merged into this present agreement; and that there is no other outstanding contract, oral or written, existing between them. 860 12. The Husband and Wife hereby jointly agree that they will hereafter, either separately or jointly as may be required, execute any deeds, releases, receipts, assignments, bills of sale, or documents of any kind or nature that may be required to fully carry out and put in force the terms of this agreement. *189 13. In the event the Wife prosecutes the present pending action she previously brought for separate maintenance, or should said action be prosecuted for a divorce, in either event this agreement shall be submitted to the Court for approval; but irrespective of the Court's approval, it is the intention of these parties for this agreement to take effect and be binding upon the parties, with effective date as of the date of its execution. IN WITNESS WHEREOF, the parties have hereunto subscribed their names as of the date and year first above written. Thomas M. Crosby Husband - Thomas Mayo Crosby Marjorie Rosen Crosby Wife - Marjorie Rosen Crosby ACCEPTANCE BY ESCROW AGENT, FIRST NATIONAL BANK OF TOPEKA The First National Bank of Topeka, Trust Department, hereby agrees to perform the duties of escrow agent in accordance with the terms of the above and foregoing agreement. In accepting any funds, securities or documents delivered hereunder it is agreed and understood between the parties hereto that the escrow bank will not be called upon to construe any contract or instrument deposited herewith. Should there be any disagreement between the parties hereto, the escrow bank reserves the right *190 to hold any money in its possession, and all papers in connection with or concerning this escrow, until a mutual agreement has been reached between all of said parties or until delivery is legally authorized and ordered by final judgment or decree of a court of competent jurisdiction. THE FIRST NATIONAL BANK
OF TOPEKA By Robert C. Guthrie Vice President and Trust Officer APPROVED: GOODELL, CASEY, BRIMAN & SEWELL By Lester M. Goodell DOHORTY & BENFER By Jim E. Benfer Attorneys for Wife
RUSSELL, MUNNS & STITES By Robert E. Russell GARLINGHOUSE, SHAW & HARGEWRETER By Warren W. Shaw Attorneys for Husband *10 EXHIBIT "C" *10 ITEMIZED SCHEDULE OF INSTALLMENT PAYMENTS *10 TO BE MADE BY HUSBAND ON PROPERTY SETTLEMENT *10
Payments
Payment Date
Unpaid Principal
Principal
Interest at 4%
Total
7-2-61
$127,400
$ 15,000
$-
$ 15,000
1-2-62
112,400
12,800
2,248
15,048
1-2-63
99,600
11,000
3,984
14,984 1-2-64
88,600
11,000
3,544
14,544
1-2-65
77,600
8,800
3,104
11,904
1-2-66
68,800
8,400
2,752
11,152
1-2-67 60,400
6,000
2,416
8,416
1-2-68
54,400
6,000
2,176
8,176
1-2-69
48,400
6,000
1,936
7,936
1-2-70
42,400
6,00 0
1,696
7,696
1-2-71
36,400
6,000
1,456
7,456
1-2-72
30,400
6,000
1,216
7,216
1-2-73
24,400
6,000
976
6,976
1-2-74
18,400
6,000
736
6,736
1-2-75
12,400
6,000
496
6,496
1-2-76
6,400
6,000
256
6,256
1-2-77
400 400
16
416
$127,400
$29,008
$156,408
[Emphasis supplied.]
*191 861 During 1961 and 1962, payments under the agreement were made to petitioner's mother, which payments were included in her reported gross income in each year of receipt as periodic payments pursuant to section 71, and were deducted by petitioner's father as payments of alimony. On March 3, 1962 petitioner's mother died. In accordance with the provisions of the stipulated agreement the following amounts were paid to petitioner during her taxable years 1963, 1964, and 1965: Installment
Interest
1963
$5,500
$1,992
1964
5,500
1,772
1965
4,400
1,552
Petitioner included both the installment and interest payment in her gross income in 1963. Petitioner subsequently filed a claim for refund for 1963 in the amount of $1,066.94, the tax attributable to the inclusion of said payments. Such claim was disallowed on July 21, 1965. The Commissioner has determined that the installment payments in 1964 and 1965 constitute income in respect of petitioner's decedent mother and are includable in petitioner's gross income in the years of receipt under section 691. The parties apparently agree that the only question presented is whether the payments received by the petitioner-daughter pursuant to the terms of the *192 agreement set forth above constitute "income in respect of a decedent." The Commissioner's position is deceptively simple and logical. It purports to follow the words of the tax statutes. Briefly, it is as follows: (1) The payments provided for petitioner's mother under the agreement were payments to be received by the mother during her life and taxable to her under section 71(a)(2) and (c) [2] *193 *194 pursuant to a written separation agreement; (2) the petitioner-daughter acquired the right to receive the amounts by reason of the death of her mother; (3) the amounts received by the petitioner-daughter are to be treated in her hands as being of the same character they would have had in the hands of her mother and so are to be included in the petitioner-daughter's gross income by virtue of section 691(a)(1) and (3). [3] *195 862 We think the Commissioner's position rests on a false premise; i. e. that payments under the settlement agreement were taxable income to the mother. The courts have consistently recognized that there is a difference between payments which are in the nature of alimony or support under section 71, supra, and payments which are made under agreements in settlement of property rights. The former constitute reportable income of the recipient; the latter do not. The resolution of this question is a factual one. Elizabeth H. Bardwell, 38 T.C. 84 (1962), affd. 318 F. 2d 786 (C.A. 10, 1963); Riddell v. Guggenheim, 281 F. 2d 836 (C.A. 9, 1960); John Sidney Thompson, 22 T.C. 275 (1954). *196 Bernatschke v. United States, 364 F. 2d 400 (Ct. Cl. 1966); and see generally 5 Mertens, Law of Federal Income Taxation, sec. 31A.02, pp. 20-22. This conclusion follows even though the Commissioner relies on section 71(a)(2) (supra, footnote 2). This subsection which was added by the 1954 Code was not intended to make taxable to recipients payments different in character from those theretofore taxable. Among other things not important here, it simply removed the necessity for the payments to have been made under a court decree. [4] *197 All of the facts in this case have been stipulated. And though we do not have the benefit of the testimony of either of the parties to the agreement pursuant to which the payments in question were made, we do have the agreement itself in evidence. To us it is clearly a property settlement agreement. It is not ambiguous. Reference to the emphasized terms of the agreement reinforces our conclusion that it was just that. Nowhere in the agreement is there any allusion to anything except a settlement of property rights. Attention is also drawn to the fact that the pending action for separate maintenance previously brought by the wife was recognized as still subject to prosecution, as was the divorce action. In other words, the question of maintenance, support or alimony was still open, despite the settlement agreement. The only evidence to the contrary, and to be truthful, which gives us pause, is the fact that the father claimed deductions as alimony for the payments on his returns; that the *198 mother reported the payments as income as she received them; and that the daughter also reported as income the 1963 payments for which she later claimed and was denied refund. We do not think this treatment should bind the petitioner-daughter here, which only involves the years 1964 and 1965. The question as to whether this treatment of the payments in previous years was correct is not before us and we do not decide it. We also note that the mother's estate included in its assets the balance of the payments which would have been payable to her had she lived. Apparently the Commissioner has collected an estate tax based in part on this inclusion. Our holding here is that the payments in 1964 and 1965 were made under a property settlement agreement and that such payments would not have been taxable to the mother had she lived to receive them. Accordingly, in the hands of the petitioner-daughter the continued payments were not "income in respect of a decedent" and are not taxable as such income when received by the petitioner. Thus we need not decide other lurking questions such as, if the payments were in law in the nature of alimony or support in the hands of the mother, would they *199 after her death retain their character as taxable alimony in the hands of the daughter by virtue of section 691(a)(3), supra.? Decision will be entered under Rule 50. * 863 Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 unless otherwise specified.↩
2. SEC. 71 ALIMONY AND SEPARATE MAINTENANCE PAYMENTS. (a) General Rule. - * * * (2) Written separation agreement. - If a wife is separated from her husband and there is a written separation agreement executed after the date of the enactment of this title, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such agreement is executed which are made under such agreement and because of the marital or family relationship (or which are attributable to property transferred, in trust or otherwise, under such agreement and because of such relationship). This paragraph shall not apply if the husband and wife make a single return jointly. * * * (c) Principal Sum Paid in Installments. - (1) General rule. - For purposes of subsection (a), installment payments discharging a part of an obligation the principal sum of which is, either in terms of money or property, specified in the decree, instrument, or agreement shall not be treated as periodic payments. (2) Where period for payment is more than 10 years. - If, by the terms of the decree, instrument, or agreement, the principal sum referred to in paragraph (1) is to be paid or may be paid over a period ending more than 10 years from the date of such decree, instrument, or agreement, then (notwithstanding paragraph (1)) the installment payments shall be treated as periodic payments for purposes of subsection (3), but (in the case of any one taxable year of the wife) only to the extent of 10 percent of the principal sum. For purposes of the preceding sentence, the part of any principal sum which is allocable to a period after the taxable year of the wife in which it is received shall be treated as an installment payment for the taxable year in which it is received. 3. SEC. 691. RECIPIENTS OF INCOME IN RESPECT OF DECEDENTS. (a) Inclusion in Gross Income. - (1) General rule. - The amount of all items of gross income in respect of a decedent which are not properly includible in respect of the taxable period in which falls the date of his death or a prior period (including the amount of all items of gross income in respect of a prior decedent, if the right to receive such amount was acquired by reason of the death of the prior decedent or by bequest, devise, or inheritance from the prior decedent) shall be included in the gross income, for the taxable year when received, of: * * * (B) the person who, by reason of the death of the decedent, acquires the right to receive the amount, if the right to receive the amount, is not acquired by the decedent's estate from the decedent; or * * * (3) Character of income determined by reference to decedent. - The right, described in paragraph (1), to receive an amount shall be treated, in the hands of the estate of the decedent or any person who acquired such right by reason of the death of the decedent, or by bequest, devise, or inheritance from the decedent, as if it had been acquired by the estate or such person in the transaction in which the right to receive the income was originally derived and the amount includible in gross income under paragraph (1) or (2) shall be considered in the hands of the estate or such person to have the character which it would have had in the hands of the decedent if the decedent had lived and received such amount.
4. H.R. Report No. 1337, 83rd Cong., 2d Sess. (1954), pp. 9, 10. VI. Special Inclusions in Gross Income A. Alimony and separate maintenance payments (sec. 71) Present law taxes to a recipient, and allows the payor a deduction, for periodic alimony or separate maintenance payments if the payments are a legal obligation imposed by a court decree or by a written agreement incident to a decree. The attention of your committee has been called to the fact that the present treatment discriminates against husbands and wives who have separated although not under a court decree. Your committee's bill extends the tax treatment described above to periodic payments made by a husband to his wife under a written separation agreement even though they are not separated under a court decree if they are living apart and have not filed a joint return for the taxable year.
*. By official Tax Court Order, dated 9/18/70 and signed by Judge Tietjens↩, this sentence was changed to read as above. - CCH.